| | |
|---|---|
| 1 | **KAZEROUNI LAW GROUP, APC** |
| 2 | Abbas Kazerounian, Esq. (SBN: 249203) |
|   | ak@kazlg.com |
| 3 | 245 Fischer Avenue, Suite D1 |
| 4 | Costa Mesa, CA 92626 |
|   | Telephone: (800) 400-6808 |
| 5 | Facsimile: (800) 520-5523 |
| 6 | |
| 7 | Ross H. Schmierer, Esq. |
|   | (*Pro Hac Vice* Application Forthcoming) |
| 8 | ross@kazlg.com |
|   | 3000 Atrium Way, Suite 200 |
| 9 | Mt. Laurel, NJ 08057 |
| 10 | (732) 588-8688 |
| 11 | [Additional Counsel On Signature Page] |
| 12 | |
|    | *Attorneys for Plaintiff* |
| 13 | *Avantika Ahuja* |

KAZEROUNI LAW GROUP, APC

### UNITED STATES DISTRICT COURT FOR
### THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| **AVANTIKA AHUJA,** Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>**BANK OF AMERICA, N.A.; and EARLY WARNING SERVICES, LLC D/B/A ZELLEPAY.COM,**<br><br>**Defendants.** | Case No.: 2:22-cv-02313<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES FOR VIOLATIONS OF:**<br><br>1) **ELECTRONIC FUND TRANSFER ACT ("EFTA"), 15 U.S.C §§ 1693,** *ET SEQ.*;<br><br>2) **CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"), CAL. BUS. & PROF. CODE §§ 17200,** *ET SEQ.*;<br><br>3) **NEGLIGENCE.**<br><br>**JURY TRIAL DEMANDED** |

Plaintiff Avantika Ahuja ("Ahuja" or "Plaintiff") brings this complaint, by and through her attorneys and on behalf of all others similarly situated, against Defendants Bank of America, N.A. ("Bank of America" or "BOA") and Early Warning Services, LLC d/b/a Zellepay.com ("Zelle") (together the "Defendants") and alleges upon information and belief as follows:

## INTRODUCTION

1. Plaintiff is a victim of a scam targeting individual customers of BOA in connection with the Zelle mobile application, resulting in $3,500 being debited from Plaintiff's account with Bank of America without Plaintiff's authorization.

2. Such Zelle scam is well-known to Defendants. Indeed, BOA partially owns Zelle. However, Defendants have not taken appropriate steps to protect consumers from such scams which often results in losses of thousands of dollars to individual consumers and customers of Bank of America.

3. Plaintiff makes these allegations on information and belief, with the exception of those allegations that pertain to Plaintiff, or to Plaintiff's counsel, which Plaintiff alleges on personal knowledge.

4. While many violations are described below with specificity, the Complaint alleges violations of each statute cited in its entirety.

5. Unless otherwise indicated, the use of Defendants' names in this Complaint include all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the Defendants, respectively.

6. In enacting the Electronic Fund Transfer Act ("EFTA"), Congress found that the use of electronic systems to transfer funds provides the potential for substantial benefits to consumers. 15 U.S.C. § 1693(a). However, due to the unique characteristics of such systems, the application of existing consumer protection legislation was unclear during the time of its enactment, which left the rights and

liabilities of consumers, financial institutions, and intermediaries in electronic fund transfers undefined. *Id.*

7. That said, Congress's purpose in enacting the EFTA was to "provide a basic framework establishing the rights, liabilities, and responsibilities of participants in electronic fund and remittance transfer systems." *Id.* § 1693(b). However, "[t]he primary objective of [the EFTA] is the provision of individual consumer rights." *Id.*

### JURISDICTION AND VENUE

8. Original subject matter jurisdiction is valid in the U.S. District Court pursuant to 28 U.S.C. § 1331 because this case arises out of violations of federal law under the EFTA, 15 U.S.C. §§ 1693, *et seq*. Jurisdiction of this Court arises pursuant to 28 U.S.C. §§ 1331 and 1367 for supplemental jurisdiction over the California state law claims.

9. The Court has jurisdiction pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d) because (i) there is minimal diversity; (ii) Defendants are not government entities against whom the District Court may be foreclosed from ordering relief; (iii) there are more than one hundred (100) people in the putative class; and (iv) the amount in controversy exceeds $5,000,000, exclusive of interest and costs.

10. Venue is proper pursuant to 28 U.S.C. § 1391(b) because: (1) Defendants transact business within this judicial district and because Plaintiff was, and is, a resident of Woodland Hills, California at all times relevant to these claims such that a substantial part of the events giving rise to Plaintiff's causes of action against Defendants arise in this judicial district; and (2) Defendants' contacts with this District are sufficient to subject them to personal jurisdiction within this judicial district.

### PARTIES

11. Plaintiff is, and at all times mentioned herein a natural person, individual citizen and resident of California, County of Los Angeles, in this judicial district.

12. Upon information and belief, BOA is a nationally-chartered bank with its principal place of business in Charlotte, North Carolina.

13. Plaintiff is informed and believes, and thereon alleges, that Zelle is a limited liability company established under the laws of Delaware with its principal place of business in the State of Arizona.

14. Upon information and belief, Zelle is a product of Early Warning Services, LLC, a fintech company owned by seven of America's largest banks in the United States, which includes BOA.

15. Plaintiff is informed and believes, and thereon alleges, that Zelle is an instant payment services business and makes money by facilitating payments with participating banks.

## BACKGROUND ON ZELLE SCAMS

16. Created in 2017 by America's largest banks[1] to enable digital money transfers, Zelle comes embedded in banking apps and is now America's most widely used money transfer service, outpacing its closest rival (Venmo) by $260 billion in transfers in 2021.[2]

17. Though the immediacy of Zelle's service has made it a favorite primarily among consumers, it has made it a favorite among fraudsters as well.[3] Once scammers can scare or trick their victims into sending money via Zelle, "they can siphon away thousands of dollars in seconds."[4]

18. Banks, such as BOA, are aware of the widespread fraud on Zelle but are doing virtually nothing to stop it and doing little to nothing to help consumers get their money back.[5]

---

[1] Bank of America, Capital One, JPMorgan Chase, PNC, BB&T (now Truist), U.S. Bank and Wells Fargo.
[2] https://www.nytimes.com/2022/03/06/business/payments-fraud-zelle-banks.html (last visited April 6, 2022).
[3] *Ibid.*
[4] *Ibid.*
[5] *Ibid.*

19. In 2018, the New York Times reported that "Zelle, the Banks' Answer to Venmo, Proves Vulnerable to Fraud[6]." The article explained that Craigslist, PayPal and Venmo faced early criticism for leaving users vulnerable to fraud. In response, each made changes. Craigslist, for example, added a warning about scams on every sale listing. PayPal increased the protections it offers on some digital sales and provided a detailed disclosure about what transactions it will and won't protect.[7]

20. In late 2021, ABC Eyewitness News reported that a "widespread scam is targeting BOA and Zelle customers" wherein "[i]mposters claiming to be from the bank tricking consumers into sending them money through Zelle."[8]

21. Led by Idaho Attorney General Lawrence Wasden and Oregon Attorney General Ellen Rosenblum, a bipartisan coalition of thirty-three (33) attorneys general wrote the Consumer Financial Consumer Protection Bureau ("CFPB"), calling for stronger consumer safeguards for money sharing platforms and apps like Zelle[9]. The letter, written in response to the CFPB's request for comments on its inquiry into "Big Tech Payment Platforms," noted a rise in complaints against popular payment apps including Zelle. The letter highlighted that: "[m]any consumers have been scammed out of hundreds or thousands of dollars by other users of these payment platforms [like Zelle]. Scammers are attracted to real-time payment platforms, in large part, because they do not need to reveal their true identity to set up an account."

---

[6] https://www.nytimes.com/2018/04/22/business/zelle-banks-fraud.html (last visited April 6, 2022).
[7] Ibid.
[8] https://abc7chicago.com/zelle-scam-report-refunds-bank-of-america-edd/11201360/#:~:text=Bank%20of%20America%20has%20offered,someone%20is%20draining%20their%20accounts. (last visited April 6, 2022).
[9] https://www.doj.state.or.us/wp-content/uploads/2021/12/State-Attorneys-General-Comment-on-CFPBs-Inquiry-into-Big-Tech-Payment-Platforms-2021.pdf (last visited April 6, 2022).

22. Despite being keenly aware of these scams, however, Defendants have not done nearly enough to educate consumers about the risks of using Zelle,[10] a payment service in which Defendants' have a financial interest.

23. Even where BOA's customers have fraud protection when using their bank issued credit cards and debit cards, BOA refuses to protect its customers when monies are drained from their account via Zelle, which is partly owned by BOA.

## PLAINTIFF'S FACTUAL ALLEGATIONS

24. On February 7, 2022, Plaintiff misplaced her cell phone in her apartment complex while doing laundry.

25. When Plaintiff found her phone, she received emails that she had sent $3,500 through Zelle from her BOA account.

26. Plaintiff never authorized such a transfer of funds. Plaintiff also did not, and does not, know the identity of the recipients.

27. Thereafter, Plaintiff received a call from a person named "Ryan" who indicated that if Plaintiff wanted her money back she would have to go to a store and engage in "cryptocurrency transactions."

28. Plaintiff immediately filed a police report with the Los Angeles Police Department and submitted a dispute to BOA.

29. Incredibly, BOA did not approve her claim, despite the detailed dispute by Plaintiff that BOA's prior knowledge of scams involving the Zelle mobile application.

30. Plaintiff called BOA asking them to reconsider the denial and to recover the funds that were transferred from her BOA account without her authorization.

31. On March 11, 2022, BOA sent a letter to Plaintiff stating that: "[w]e completed a re-evaluation of your claim and unfortunately, we're unable to credit your account."

32. Even though Plaintiff did not authorize any such transfer of funds from her

---

[10] See footnote 2 supra.

BOA account, BOA would still not approve her claim because it opined: (i) "[o]ur investigation found that the transaction ion question was completed using a device that is consistent with previous valid account activity; (ii) our investigation found that the transaction in question was validated using an authentication code sent to a valid phone number belonging to a signer on the account; and (iii) our investigation found that the transaction in question was confirmed by your via (SMS/MMS) text message response or speaking directly with Fraud Detection employee."

33. Like other BOA customers that have had their accounts debited (and in some cases drained) by imposters and scam artists[11], BOA denied Plaintiff's dispute seeking reversal of the unauthorized transaction(s) stating that these victims, *its very own customers*, had authorized the payments and were responsible for the loss.

34. Fortunately, "Regulation E" protects victims of fraudulent money transfers even if BOA refuses to do so.

## CLASS ALLEGATIONS

35. Plaintiff brings this action on behalf of herself and on behalf of all other persons similarly situated.

36. Plaintiff in a member of and seeks to represent a nationwide Class, pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), defined as:

> All persons within the United States whose bank account with BOA was debited via one or more transactions using the Zelle mobile application that was not permanently credited by Defendant/s in full within 45 days of a dispute by the customer and/or the consumer's authorized representative concerning the transaction(s).

37. Additionally, Plaintiff in a member of and seeks to represent a California Sub-Class, pursuant to Fed. R. Civ. P. 23(b)(2), (b)(3) and/or (b)(4), defined as:

---

[11] *See* FN 8.

> All persons residing in California whose bank account with BOA was debited via one or more transactions using the Zelle mobile application that was not permanently credited by Defendant/s in full within 45 days of a dispute by the customer and/or the consumer's authorized representative concerning the transaction(s).

38. Excluded from the Class and Sub-Class are Defendants' officers, directors, and employees; any entity in which Defendants have a controlling interest; and the affiliates, legal representatives, attorneys, successors, heirs, and assigns of Defendant. Further excluded from the Class and Sub-Class are members of the judiciary to whom this case is assigned, their families, and members of their staff.

39. Plaintiff reserves the right to modify the proposed class definitions, including but not limited to expanding the class to protect additional individuals and to assert additional sub-classes as warranted by additional investigation.

40. <u>Numerosity</u>: The members of the Class and Sub-Class are so numerous that joinder of all of them is impracticable. While the exact number of Class Members is unknown to Plaintiff at this time, based on information and belief, the Class and Sub-Class consists of thousands of individuals nationwide.

41. <u>Commonality</u>: There are questions of law and fact common to the Class and Sub-Class, which predominate over any questions affecting only individual Class Members. These common questions of law and fact include, without limitation:

    a. Whether Plaintiff and the Class lost money that was transferred from their account via Zelle;

    b. Whether Plaintiff and the Class are customers of BOA at the time they lost money;

    c. Whether Defendant BOA violated the EFTA by failing to adequately investigate the disputes of Plaintiff and the Class;

    d. Whether Defendant BOA violated the EFTA by failing to correct errors on the accounts of Plaintiff and the Class;

e. Whether the transactions at issue were unauthorized EFTs, making them errors subject to the EFTA's remedial provisions;

f. Whether Plaintiff and the Class are entitled to maximum statutory damages under the EFTA;

g. Whether the conduct of Defendant BOA was "unlawful" as that term is defined in the UCL;

h. Whether the conduct of Defendant BOA was "unfair" as that term is defined in the UCL;

i. Whether Defendant BOA was negligent in its actions or omissions; and

j. Whether Plaintiff and the Class are entitled to injunctive relief.

42. <u>Typicality</u>: Plaintiff's claims are typical of those of other Class and Sub-Class Members because Plaintiff was a victim of the Zelle scam by a third party who caused a withdrawal funds from her BOA account to occur through the Zelle mobile application, after disputing that unauthorized transaction, Plaintiff was informed by BOA that the unauthorized transaction would ultimately not be reversed by BOA.

43. <u>Adequacy of Representation</u>: Plaintiff will fairly and adequately represent and protect the interests of Class and Sub-Class Members. Plaintiff's Counsel are competent and experienced in litigating consumer class actions.

44. <u>Predominance</u>: Defendants have engaged in a common course of conduct toward Plaintiff, Class Members, and Sub-Class Members, in that Plaintiff's, Class and Sub-Class Members were induced into allowing a third party make unauthorized withdrawals on their BOA accounts using Zelle. The common issues arising from Defendants' conduct affecting Class and Sub-Class Members set out above predominate over any individual issues. Adjudication of these common issues in a single action has important and desirable advantages of judicial economy.

45. <u>Superiority</u>: A class action is superior to other available methods for the fair

and efficient adjudication of the controversy. Class treatment of common questions of law and fact is superior to multiple individual actions or piecemeal litigation. Absent a Class action, most Class and Sub-Class Members would likely find that the cost of litigating their individual claims is prohibitively high and would therefore have no effective remedy. The prosecution of separate actions by individual Class and Sub-Class Members would create a risk of inconsistent or varying adjudications with respect to individual Class and Sub-Class Members, which would establish incompatible standards of conduct for Defendant. In contrast, the conduct of this action as a Class action presents far fewer management difficulties, conserves judicial resources and the parties' resources, and protects the rights of each Class Member.

46. Defendants have acted on grounds that apply generally to the Class and Sub-Class, so that class certification is appropriate.

47. Notice: Plaintiff anticipates providing direct notice to the Class and Sub-Class for purposes of class certification, via U.S. Mail and/or email, based upon Defendants' and/or Defendants' agents' records.

### FIRST CAUSE OF ACTION
### VIOLATION OF THE ELECTRONIC FUND TRANSFER ACT ("EFTA"), 15 U.S.C. §§ 1693, *ET SEQ*.
### (On Behalf of Plaintiff and the Class Against BOA Only)

48. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

49. The Electronic Fund Transfer Act ("EFTA") and Regulation E apply to electronic fund transfers that authorize a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(a).

50. "If a financial institution, within sixty days after having transmitted to a consumer pursuant to [15 U.S.C. § 1693d(a), (c), or (d)] or notification pursuant to

[15 U.S.C. § 1693(d)] receives oral or written notice in which the consumer[:] (1) sets forth or otherwise enables the financial institution to identify the name and the account number of the consumer; (2) indicates the consumer's belief that the documentation, or, in the case of notification pursuant to [15 U.S.C. § 1693d(b)], the consumer's account, contains an error and the amount of such error; and (3) sets forth the reasons for the consumer's belief (where applicable) that an error has occurred," the financial institution is required to investigate the alleged error. 15 U.S.C. § 1693f(a).

51. After said investigation, the financial institution must determine whether an error has occurred and report or mail the results of such investigation and determination to the consumer within ten (10) business days. *Id.*

52. A financial institution that provisionally recredits the consumer's account for the amount alleged to be in error pending an investigation, however, is afforded forty-five (45) days after receipt of notice of error to investigate. *Id.* § 1693f(c).

53. Pursuant to the EFTA, an error includes "an unauthorized electronic fund transfer." *Id.* § 1693f(f).

54. An Electronic Fund Transfer ("EFT") is any transfer of funds that is initiated through an electronic terminal, telephone, computer, or magnetic tape for the purpose of ordering, instructing, or authorizing a financial institution to debit or credit a consumer's account. 12 C.F.R. 1005.3(b)(1). Accordingly, Regulation E applies to any person-to-person ("P2P") or mobile payment transactions that meet the definition of EFT. 12 C.R.F. 1005.3(b)(1)(v); *id.*, Comment 3(b)(1)-1ii.

55. Unauthorized EFTs are EFTs from a consumer's account initiated by a person other than the consumer without actual authority to initiate the transfer and from which the consumer receives no benefit. 12 C.F.R. 1005.2(m).

56. According to the CFPB, when a third party fraudulently induces a consumer into sharing account access information that is used to initiate an EFT from the

consumer's account, that transfer meets Regulation E's definition of an unauthorized EFT.[12]

57. In particular, Comment 1005.2(m)-3 of Regulation E explains that an unauthorized EFT includes a transfer initiated by a person who obtained the access device from the consumer through robbery or fraud. As such, when a consumer is fraudulently induced into sharing account access information with a third party, and a third party uses that information to make an EFT from the consumer's account, the transfer is an unauthorized EFT under Regulation E.[13]

58. Here, a third-party scammer used the Zelle mobile application to access BOA account information. The third party then used the Zelle mobile application to make unauthorized EFTs from the accounts of Plaintiff and other class members from their BOA accounts.

59. After the unauthorized EFTs were made, said EFTs appeared on the bank statements of Plaintiff and other class members.

60. Plaintiff and other class members notified BOA of these errors within sixty (60) days of their appearances on the accounts of Plaintiff and other class members.

61. As a direct and proximate result of the conduct of BOA, Plaintiff and other Class Members were unable to reclaim funds that were fraudulently taken from their accounts with BOA.

62. Upon information and belief, BOA knowingly and willfully concluded that the transfers of funds via Zelle on accounts of Plaintiff and other Class members were not in error when such conclusions could not reasonably have been drawn from the evidence available to the financial institutions at the time of the investigation. 15 U.S.C. § 1693f(e)(2).

---

[12] https://www.consumerfinance.gov/compliance/compliance-resources/deposit-accounts-resources/electronic-fund-transfers/electronic-fund-transfers-faqs/ (last visited March 30, 2022).
[13] *Ibid.*

63. Upon information and belief, BOA intentionally determined that the unwanted transfer of funds via Zelle on accounts of Plaintiff and other Class members were not in error due to, at least in part, BOA's financial self-interest as a stakeholder in Zelle.

64. As such, Plaintiff and other class members are each entitled to (i) actual damages; (ii) treble damages; (iii) the lesser of $500,000.00 or one percent (1%) of the net worth of BOA; and (iii) reasonable attorneys' fees and costs. *Id.* §§ 1693f(e)(2), 1693m(a)(2)(B)-(3).

## SECOND CAUSE OF ACTION
## CALIFORNIA'S UNFAIR COMPETITION LAW ("UCL"),
## CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.*
### (On Behalf of Plaintiff and the Sub-Class Against BOA Only)

65. Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

66. The UCL defines "unfair business competition" to include any "unlawful, unfair, or fraudulent" act or practice, as well as any "unfair, deceptive, untrue or misleading" advertising. Cal. Bus. & Prof. Code § 17200.

67. The UCL imposes strict liability. Plaintiff need not prove that Defendant intentionally or negligently engaged in unlawful, unfair, or fraudulent business practices—but only that such practices occurred.

### *"Unfair" Prong*

68. A business practice is "unfair" under the UCL if it offends an established public policy or is immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers, and that unfairness is determined by weighing the reasons, justifications and motives of the practices against the gravity of the harm to the alleged victims.

69. BOA's actions constitute "unfair" business practices because, as alleged above, they intentionally denied declined to reverse charges on the accounts of Plaintiff and Class Members even though they knew or should have known that said charges were in fact unauthorized transactions that needed to be reversed pursuant to the terms of EFTA.

70. BOA's failure to adequately investigate the unauthorized transactions, including after acknowledging the Zelle scam in some instances, coupled with their financial interest in Zelle and the bank's decision to not permanently credit their customers' accounts that were affected by the scam, offends established public policy, including that embodied by the EFTA.

71. Through their practices, BOA saves millions of dollars which should have, in all fairness, been permanently credited to Plaintiff and the California Sub-Class following their disputes with the bank.

72. The harm to Plaintiff and Class Members grossly outweighs the utility of Defendant's practices as there is no utility to practices of BOA.

### *"Unlawful" Prong*

73. A business act or practice is "unlawful" under the UCL if it violates any other law or regulation.

74. BOA's acts and practices alleged above constitute unlawful business acts or practices as they have violated the plain language of EFTA as described in Plaintiff's First Cause of Action above.

75. The violation of any law constitutes as "unlawful" business practice under the UCL.

76. These acts and practices alleged were intended to or did result in violations of EFTA.

77. BOA has and will continue to unlawfully deny the transaction disputes of Plaintiff, the Class, and the public by claiming that said disputed transactions are "authorized," even though said transactions are actually "unauthorized," as that term

is defined by EFTA and applicable regulations. Consequently, the practices of BOA constitute unfair and unlawful business practices within the meaning of the UCL.

78.     Pursuant to the UCL, Plaintiff and the Class are entitled to preliminary and permanent injunctive relief and order BOA to cease this unfair and unlawful competition, as well as disgorgement and restitution to Plaintiff and the Class of all the revenues associated with this unfair and unlawful competition, or such proton of said revenues as the Court may find applicable.

## THIRD CAUSE OF ACTION
## NEGLIGENCE

**(On Behalf of Plaintiff, the Class and the Sub-Class Against All Defendants)**

79.     Plaintiff realleges and incorporates herein by reference the allegations contained in all preceding paragraphs, and further alleges as follows:

80.     BOA owed Plaintiff and the Class at least a duty to take reasonable steps to safeguard their financial information and protect their financial accounts from malicious third parties, adequately warn of known risks and/or dangers associated with the Zelle mobile application, and properly investigate disputed transaction accomplished through the Zelle mobile application.

81.     Zelle owed Plaintiff and the Class at least a duty to take reasonable steps to adequately warn of known risks and/or dangers associated with the Zelle mobile application, and to take appropriate steps in response to a known scam involving the mobile application to protect consumers from malicious third parties.

82.     Defendants breached their obligations to Plaintiff and Class Members and were otherwise negligent and/or reckless by at least:

        a.     Failing to properly warn Plaintiff and the Class of the risks and/or dangers associated with the Zelle mobile application;

b. Failing to adequately investigate the unauthorized transactions made on the accounts of Plaintiff and the Class using the Zelle payment platform.

c. Failing to take appropriate steps to avoid unauthorized transactions through the Zelle mobile application in response to known scams and continuing with business as normal;

d. Failing to implement appropriate and sufficient safeguards against scams of the nature alleged in the Complaint in light of the knowledge that those scams have been rampant across the country;

e. Failing to reverse unauthorized transactions following disputes of Plaintiff and the Class despite Defendants' knowledge that said transactions were unauthorized as part of a scam that is well-known to Defendants; and

f. Failing to permanently reverse unauthorized transactions upon a sufficient showing by Plaintiff and the Class that said transactions were unauthorized.

83. As a direct and proximate result of Defendants' breach, Plaintiff and Class Members lost funds from their BOA accounts.

84. Accordingly, Plaintiff and Class members have lost millions of dollars and further face a continuing and increased risk of fraud and loss of money.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment against Defendants, and each of them, as follows:

- Class certification of this action;
- Appointment of Plaintiff as Class Representative;
- Appointment of Plaintiff's attorneys as Class Counsel;
- An award of actual damages, in an amount to be determined at trial;
- An award of treble damages against BOA pursuant to the EFTA;

- An award of the lesser of $500,000.00 or one percent (1%) of the net worth of BOA;
- Injunctive and other equitable relief against Defendants as necessary to protect the interests of Plaintiff and other Class Members, and an order prohibiting Defendants from engaging in unlawful and/or unfair acts described above, including public injunctive relief;
- An order of restitution from Defendants;
- An order declaring Defendants' conduct as unlawful;
- Costs of Suit;
- Pre- and post-judgment interest;
- An award of reasonable attorneys' fees; and
- Any other relief the Court may deem just and proper, including interest.

## DEMAND FOR TRIAL BY JURY

Plaintiff, individually and on behalf of all others similarly situated, hereby demands a jury trial on all claims so triable.

Dated: April 6, 2022                              Respectfully submitted,

                                                  **KAZEROUNI LAW GROUP, APC**

                                                  By:  /s/ Abbas Kazerounian
                                                       Abbas Kazerounian, Esq.
                                                       *ATTORNEYS FOR PLAINTIFF*

**ADDITIONAL PLAINTIFF'S COUNSEL**
**KAZEROUNI LAW GROUP, APC**
Jason A. Ibey, Esq. (SBN: 284607)
jason@kazlg.com
321 N Mall Drive, Suite R108
St. George, Utah 84790
Telephone: (800) 400-6808
Facsimile: (800) 520-5523